UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

**CHRISTINA MARINO,**

    *Plaintiff*,

v.

**NAVY MUTUAL AID ASSOCIATION,**
**29 Carpenter Road**
**Arlington, VA 22212,**

**Serve:**

    **Brian E. Luther**
    **Chief Executive Officer**
    **Navy Mutual Aid Association**
    **29 Carpenter Road**
    **Arlington, VA 22212,**

    *Defendant.*

Case No.:_____

**JURY TRIAL DEMANDED**

**CIVIL COMPLAINT FOR MONETARY
AND EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL**

1. Navy Mutual Aid Association (NMAA) unlawfully retaliated against Marino in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*., when it subjected Marino to a lowered performance evaluation, demoted her, and lowered her salary after her use of medical leave for: a fractured tibia, kidney failure, and subsequent hospitalizations for pancreatic pseudocyst.

2. NMAA unlawfully discriminated against Marino in violation of the Americans with Disabilities Act, 42 U.S.C. § 12203, *et seq*., when it subjected Marino to a lowered performance evaluation, demoted her, and lowered her salary due to her disabilities of: a fractured tibia, kidney failure, and a pancreatic pseudocyst.

1

3. NMAA unlawfully discriminated against Marino on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*, when it subjected her to a lowered performance evaluation, demoted her, and lowered her salary.

4. NMAA unlawfully discriminated against Marino on the basis of age in violation of the Age Discrimination in Employment Act of 1967, ADEA, 29 U.S.C. §§ 621, *et seq.*, when it subjected her to a lowered performance evaluation, demoted her, and lowered her salary.

## PARTIES

5. Plaintiff Christina Marino is a resident of the Commonwealth of Virginia and resides in Alexandria, Virginia.

6. Defendant Navy Mutual Aid Association has its headquarters and principal place of business in the Commonwealth of Virginia located at 29 Carpenter Road, Arlington, Virginia 22212.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically the ADA, 42 U.S.C. § 12101, *et seq.*, the FMLA, 29 U.S.C. § 2601, *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*, and the ADEA, 29 U.S.C. §§ 621, *et seq.*

8. The Court has jurisdiction over these claims because Marino exhausted her administrative remedies under Title VII, the ADA, and the ADEA with the Equal Employment Opportunity Commission. The EEOC issued Marino a Notice of Right to Sue on September 8, 2020.

9. The Court has personal jurisdiction over Defendant Navy Mutual Aid Association because Navy Mutual Aid Association has its headquarters in Virginia and the alleged unlawful acts occurred in Virginia and within this District.

10. Venue in this District is appropriate under 28 U.S.C. § 1391 because Defendant Navy Mutual Aid Association is located in this District, and this District is the location in which the alleged unlawful acts took place.

## FACTUAL ALLEGATIONS

11. NMAA hired Marino in 2015 as its Director of Policyholder Services, and in October of 2016 it promoted Marino to Director of Claims and Customer Service.

12. Prior to 2019, Marino had a strong record of performance. In December of 2017, Marino received a performance review of 4.5 out of 5.0. In October of 2018, Marino also received a performance rating of 4.0 out of 5.0.

13. In January of 2019, NMAA promoted Marino to the position of Senior Director of Member Services, which was a Level 45 Senior Director with an annual salary of $177,000.

14. In the position of Senior Director of Member Services, Marino had two direct reports and 25 indirect reports. Marino reported to COO Sangeeta Jacob in this position.

15. On one occasion, in or about early-to-mid 2019, Sangeeta Jacob and Marino had a conversation in which Jacob explained her dream to appoint as many women of color to management positions as possible. Although Marino understood the legitimate reasons to promote diversity and inclusivity in the workplace, she noted that Jacob seemed to place significant emphasis on this "dream."

16. Later in 2019, Marino asked a direct report named Lindsay McFarland (who is African American and substantially younger than Marino) about her progress in completing

claims work. McFarland reported that she was "caught up." But later that day, another subordinate named Melissa Henderson asked Marino about a file she needed. This request led Marino to look at McFarland's desk. On McFarland's desk, Marino saw the file that McFarland had previously referenced when she reported that she was "caught up." Marino observed that it was far less complete than reported by McFarland. Marino felt misled. When Marino later reported this incident to Jacob, Jacob chastised Marino with comments to the effect of, "Well, perhaps Lindsay doesn't feel comfortable talking to you, and that's why she was not truthful." After this incident Jacob continued to place focus on promoting McFarland.

17. On or about June 1, 2019, Marino fractured her right tibia as she boarded a plane in Connecticut. As a result of the injuries she sustained, Marino required medical attention and medication, and her doctor ordered that she stay off her leg for eight weeks to allow the bone to heal. Marino's treatment included an ibuprofen regimen.

18. About three days after Marino began the ibuprofen regimen, her kidneys began to fail due to an interaction between the ibuprofen and another medication Marino already took. As a result, Marino spent time in the hospital.

19. Marino took about eight weeks of medical leave in June and July of 2019 due to her injury and subsequent complications. Marino arranged this medical leave with NMAA's HR department.

20. During the period of leave, Jacob almost immediately appointed McFarland to a new position that allowed McFarland to perform most of Marino's duties.

21. Marino returned to work in early August 2019, though she still required the use of crutches to facilitate her mobility. Marino resumed claims duties, while McFarland concentrated on the training of new employees and the Customer Service team.

22. In about mid October 2019, Marino attended the monthly Executive Development Staff Meeting. During this meeting, the Vice President of Human Resources Miranda Dedja recounted that NMAA was in the process of renegotiating its health insurance premiums for the staff. Dedja then made a comment to the effect that NMAA would likely be seeing "higher premiums because of broken legs and the like." CEO Bruce Engelhardt then quipped that he would like to see the claims data, and Dedja responded that they "could discuss that later."

23. On or about November 13, 2019, Marino became very ill and had to be admitted to the hospital where she received treatment for septic shock, severe dehydration, and kidney failure in the Intensive Care Unit. Marino ultimately had to be re-hospitalized several times within the span of two weeks because of these ongoing medical conditions. Ultimately, Marino received a diagnosis of a pancreatic pseudocyst.

24. On or about November 22, 2019, Sangeeta Jacob sent Marino a text message in which she recommended that Marino should take the rest of the year off to recover and return in the new year. Marino consulted with her physician, and they both agreed this would be best for her recovery. NMAA then extended Marino's short-term disability through December 31, 2020.

25. During this time Marino provided Jacob with updates on her recovery when Jacob contacted her.

26. On or about January 2, 2020 Marino had a follow-up appointment with her doctor. At this time Marino still suffered from general weakness and had a series of additional upcoming appointments. Marino subsequently took short-term disability through February 1, 2020. Again, Marino provided Jacob with updates when they had contact.

27. On or about January 17, 2020, Marino received an email from Michelle Thompson in NMAA HR, which said that Marino's medical leave allowance had run to its

completion on December 24, 2019. There were no other instructions or details provided in this email.

28. On or about January 23, 2020, Jacob sent Marino a text message and asked if Marino had time to speak with her.

29. Later, on or about January 23, 2020, Marino spoke with Jacob and Thompson who relayed that Marino's position had been eliminated. Jacob further said that Marino would be demoted to a lower level with a significant salary cut from $177,000 a year to $140,000 a year. Marino expressed that she believed this act was retaliation for her use of medical leave. Jacob and Thompson then insisted that the new position was not a demotion.

30. On or about January 24, 2020, Jacob once again placed a phone call to Marino. During that call, Jacob said that she had "done some thinking," and Jacob then conveyed that the new position's salary would be modified to $154,000 a year. This was the salary that Marino had earned prior to her promotion in 2019, and it was still significantly less than the salary she had earned prior to her leave.

31. On or about January 27, 2020, Jacob sent the offer letter for the position to Marino. The letter confirmed that the position was a Level 41 position with a salary of $154,000 per year.

32. On or about January 30, 2020 Marino signed the offer letter under protest. Below her signature, Marino wrote, "I accept this position, but under protest and with the belief that this demotion is retaliation for my taking FMLA."

33. On or about January 31, 2020, Dedja sent an email to Marino and asked to set up a meeting for Tuesday, February 4, 2020 regarding Marino's statement about retaliation. Dedja

also said she could not meet on Monday, February 3, 2020 because she would be out of the office.

34. On or about February 3, 2020 Marino returned to work. Engelhardt sent Marino a meeting invitation with the subject of "Welcome."

35. Marino and Engelhardt met later that day. During the meeting, Engelhardt made a statement to the effect of, "This was nothing personal. You got sick, and we had to move on. And there was no retaliation." Marino then responded with words to the effect of, "Look at it how I do. And I am not going to sit her and litigate this issue in your office." Engelhardt responded that Marino "obviously had an attorney." Engelhard then asked, "How do I make this go away?" Marino told Engelhardt that NMAA needed to make her a Director again. Engelhardt insisted, "This has to be fixed." Engelhardt placed a call to Jacob and asked that she come to his office, and he told her to "fix this." Jacob agreed to review the job description with Marino and also said they could "work it out."

36. Then, on or about February 5, 2020, Marino met with Jacob. Marino and Jacob discussed Marino's new position, and Jacob made a statement to Marino to the effect that she "wanted to keep things as they [were]."

37. Around the same time, Marino signed into the HR system (DayForce) in order to review her 2019 evaluation. For the first time ever, Marino received a 3.0/5.0 rating on her evaluation. In the evaluation, Jacob alleged that Marino "had challenges building the same relationship with direct reports" that Marino had with peers. Jacob further wrote in the evaluation, "Since Christina was in and out of the office throughout the year, it's been challenging for her and the staff to maintain and make significant contributions in 2019." With

this comment, Jacob linked Marino's lowered performance rating directly to her taking medical leave.

38. On or about February 6, 2020, Marino met with Dedja who told Marino that NMAA was "working on a new proposal." Dedja further made a statement to the effect of, "We want you to stay. We need your knowledge and experience." NMAA then sent Marino a revised offer letter for the same position of Senior Administrator of Operations, with the same salary of $154,000 per year, but with a level increase from level 41 to level 42. Under the terms of the new offer letter, NMAA would also allow Marino to keep her prior parking space, keep her cell phone reimbursement, and be able to maintain but not contribute to her 457B account. Marino signed this offer letter "under continued protest."

39. After Marino raised her concerns about the propriety of her performance review, her demotion, and her lowered salary, Marino felt ostracized in the workplace. NMAA relocated Marino to an office on the third floor away from the majority of the staff. Other employees were also reluctant to engage with Marino in the office.

40. On or about March 9, 2020, Marino filed a second internal complaint with Dedja. In her complaint, Marino set forth details of the facts surrounding her employment, and she again raised concerns that her demotion and her salary reduction were discriminatory and retaliatory in nature. Specifically, Marino alleged that she had suffered retaliation for use of medical leave, had been subjected to discrimination the basis of disabilities, had been subjected to discrimination on the basis of race and age, and had been retaliated against for previous complaint.

41. On or about March 10, 2020, Dedja met with Marino. Dedja said that NMAA would offer Marino the position of Director of Policy Administration. The position would report

to the General Counsel. Dedja then said the position would come with a pay raise, but she did not yet know what the raise would be. Dedja then insisted "there was no retaliation or discrimination." Dedja further told Marino that the demotion was a "business decision" to eliminate the Senior Director position. Dedja further told Marino she needed to accept the proposal by March 12, 2020 or propose an alternate resolution.

42. Marino asked Dedja later on March 10, 2020 for a written job description. Dedja provided a position description on March 11, 2020 for "Director of Policy and Contracts Compliance," which would report to the General Counsel. Dedja gave the pay grade and salary to Marino the next day on a post-it note. The level was a 44 (Director) with a salary of $163,797. Additionally, under the new position, Marino would have no direct reports. Further, NMAA made no affirmative statement of how it investigated Marino's complaints or any other action it proposed to take to remedy Marino's concerns.

43. As a result of NMAA's actions, Marino has suffered monetary damages and compensatory damages for emotional distress, harm to reputation, and humiliation.

## COUNT I
### Retaliation
### Family and Medical Leave Act – 29 U.S.C. § 2615, *et seq.*

44. Marino incorporates the foregoing allegations as though fully alleged herein.

45. Marino is a "person" and an "employee" as defined by 29 U.S.C. § 2611(2)(A), and NMAA is an "employer" as defined by 29 U.S.C. § 2611(4)(A).

46. Marino had a right under the FMLA, 29 U.S.C. § 2612(a)(1), to twelve workweeks of leave during any twelve-month period for family and health-related matters.

47. Marino has suffered from serious health conditions.

48. Marino engaged in protected activity under the FMLA when she sought the use of medical leave to recover from a broken tibia, as well as her subsequent hospitalizations for kidney failure and later pancreatic pseudocyst.

49. Marino engaged in protected activity under the FMLA when she used medical leave from June 2019 through August 2019, and again from November 2019 through January 2019.

50. Marino engaged in protected activity under the FMLA when she reported to Jacob and Thompson in January 2020 that she believed her demotion was in retaliation for her use of medical leave.

51. Marino engaged in protected activity under the FMLA when she formally complained to Jacob and Thompson that the actions taken against her, her demotion and subsequent lower salary, were discrimination and retaliation for her use of medical leave.

52. Marino engaged in protected activity under the FMLA when she signed offer letters for demoted positions under protest and stated her belief that the demoted positions were retaliation for her use of medical leave.

53. NMAA, through Jacob took an adverse action against Marino when it subjected Marino to heightened scrutiny of her performance on her 2019 performance evaluation.

54. NMAA took an adverse action against Marino on or about January 23, 2020 when, through Jacob and Thompson, it presented her with the elimination of her position and offer of a lower level position with a significantly lower salary.

55. NMAA, through Jacob, took an adverse action against Marino when it issued Marino a revised position description on or about January 27, 2020 that still contained a significant reduction in pay and was several grades lower than Marino's previous job.

56. NMAA, through Dedja, took an adverse action against Marino when it issued Marino a revised position description on or about February 6, 2020 that contained a significantly lower salary than Marino's previous position, as well as a reduction in Level and a restriction on Marino's ability to further contribute to her 457B account.

57. NMAA took these actions in temporal proximity to Marino's protected activities.

58. NMAA, through Jacob, also referenced Marino's use of medical leave as a factor in her decision to lower Marino's performance review.

59. NMAA's purported legitimate business reasons for the actions taken against Marino are mere pretext.

60. Due to NMAA's unlawful violation of the FMLA, Marino has suffered damages.

## COUNT II
### Discrimination
### Americans with Disabilities Act – 42 U.S.C. § 12101, *et seq.*

61. Marino incorporates the foregoing allegations as though fully alleged herein.

62. At all times relevant to this complaint, Navy Mutual Aid Association was an employer as defined in and provided for under the Americans with Disabilities Act (ADA). 42 U.S.C. § 12101, *et seq.*

63. At all times relevant to this complaint, Marino was an employee as defined under the ADA.

64. Marino suffered disabilities within the meaning of the ADA.

65. Marino sought the use of medical leave as an accommodation for her recovery from a broken tibia and two subsequent hospitalizations for kidney failure and pancreatic pseudocyst.

66. NMAA, through Jacob, took an adverse action against Marino when it subjected Marino to heightened scrutiny of her performance on her 2019 performance evaluation.

67. NMAA took an adverse action against Marino on or about January 23, 2020 when, through Jacob and Thompson, it presented her with the elimination of her position and offer of a lower level position with a significantly lower salary.

68. NMAA, through Jacob, took an adverse action against Marino when it issued Marino a revised position description on or about January 27, 2020 that still contained a significant reduction in pay and was several grades lower than Marino's previous job.

69. NMAA, through Dedja, took an adverse action against Marino when it issued Marino a revised position description on or about February 6, 2020 that contained a significantly lower salary than Marino's previous position, as well as a reduction in Level and a restriction on Marino's ability to further contribute to her 457B account.

70. NMAA took these actions in temporal proximity to Marino's use of leave as an accommodation for disabilities.

71. NMAA, through Jacob, also referenced Marino's use of medical leave as a factor in her decision to lower Marino's performance review.

72. NMAA's purported legitimate business reasons for the actions taken against Marino are mere pretext.

73. Due to NMAA's unlawful violation of the ADA, Marino has suffered damages.

74. Marino filed a Charge of Discrimination with the Equal Employment Opportunity Commission on March 30, 2020.

75. The Equal Employment Opportunity Commission issued Marino a Dismissal of her Charge and Notice of Right to Sue on September 8, 2020.

## COUNT III
### Retaliation
### Americans with Disabilities Act – 42 U.S.C. § 12101, et seq.

76. Marino incorporates the foregoing allegations as though fully alleged herein.

77. At all times relevant to this complaint, Navy Mutual Aid Association was an employer as defined in and provided for under the Americans with Disabilities Act (ADA). 42 U.S.C. § 12101, *et seq.*

78. At all times relevant to this complaint, Marino was an employee as defined under the ADA.

79. Marino engaged in protected activity under the ADA when she used medical leave as an accommodation for disabilities.

80. Marino engaged in protected activity under the ADA when she complained to Jacob and Thompson that she believed her demotion and salary decrease were discrimination and retaliation for her use of medical leave to recuperate from severe medical conditions.

81. Marino engaged in protected activity under the ADA when she signed offer letters for demoted positions under protest and stated her belief that the demoted positions were retaliation for her use of medical leave.

82. NMAA, through Jacob, took an adverse action against Marino when it subjected Marino to heightened scrutiny of her performance on her 2019 performance evaluation.

83. NMAA, through Jacob, took an adverse action against Marino when it issued Marino a revised position description on or about January 27, 2020 that still contained a significant reduction in pay and was several grades lower than Marino's previous job.

84. NMAA, through Dedja, took an adverse action against Marino when it issued Marino a revised position description on or about February 6, 2020 that contained a significantly

lower salary than Marino's previous position, as well as a reduction in Level and a restriction on Marino's ability to further contribute to her 457B account.

85. NMAA took these actions in temporal proximity to Marino's use of leave as an accommodation.

86. NMAA, through Jacob, also referenced Marino's use of medical leave as a factor in her decision to lower Marino's performance review.

87. NMAA's purported legitimate business reasons for the actions taken against Marino are mere pretext.

88. Due to NMAA's unlawful violation of the ADA, Marino has suffered damages.

89. Marino filed a Charge of Discrimination with the Equal Employment Opportunity Commission on March 30, 2020.

90. The Equal Employment Opportunity Commission issued Marino a Dismissal of her Charge and Notice of Right to Sue on September 8, 2020.

## COUNT IV
### Race Discrimination
### Title VII of the Civil Rights Act - 42 U.S.C. § 2000e, *et seq*.

91. Marino hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

92. Navy Mutual Aid Association is an "employer" as defined by 42 U.S.C. § 2000e(b).

93. Marino is an "employee" as defined by 42 U.S.C. § 2000e(f).

94. Marino is white.

95. NMAA discriminated against Marino because of her race when it removed her from her position as Senior Director, demoted her to Senior Administrator of Operations in January 2020, and significantly reduced Marino's salary.

96. The adverse actions against Marino, including her demotion, arose after a conversation with Jacob in which Jacob expressed her intent to promote as many young women of color as possible to management.

97. Further, when Marino suggested to Jacob that an African American employee had been dishonest in terms of work production, Jacob chastised Marino for her statements.

98. Later, Jacob took steps to promote that employee and allow her to perform Marino's duties after Marino took leave.

99. Through these actions, Jacob showed preferential treatment to non-white employees, which raises an inference of discrimination based upon race.

100. NMAA had no legitimate business reasons for demoting Marino or reducing her salary, and its stated reasons for doing so are pretext for race discrimination.

101. Marino has sustained damages as a result NMAA's illegal discrimination in violation of Title VII.

102. Marino filed a Charge of Discrimination with the Equal Employment Opportunity Commission on March 30, 2020.

103. The Equal Employment Opportunity Commission issued Marino a Dismissal of her Charge and Notice of Right to Sue on September 8, 2020.

## COUNT V
### Race Discrimination
### Section 1981 of the Civil Rights Act of 1866 - 42 U.S.C. § 1981, *et seq.*

104. Marino hereby incorporates the allegations set forth in the foregoing paragraphs

as though fully alleged herein.

105. At all times relevant to this complaint, Marino was a person within the meaning of Section 1981.

106. At all times relevant to this complaint, Marino had an employment relationship with Navy Mutual Aid Association.

107. Marino is white.

108. NMAA discriminated against Marino because of her race when it removed her from her position as Senior Director, demoted her to Senior Administrator of Operations in January 2020, and significantly reduced Marino's salary.

109. The adverse actions against Marino, including her demotion, arose after a conversation with Jacob in which Jacob expressed her intent to promote as many young women of color as possible to management.

110. Further, when Marino told Jacob that an African American employee had been dishonest in terms of work production, Jacob chastised Marino for her statements.

111. Later, Jacob took steps to promote that employee and allow her to perform Marino's duties after Marino took leave.

112. Through these actions, Jacob showed preferential treatment to non-white employees, which raises an inference of discrimination based upon race.

113. NMAA had no legitimate business reasons for demoting Marino or reducing her salary, and its stated reasons for doing so are pretext for race discrimination.

114. Marino has sustained damages as a result NMAA's illegal discrimination in violation of Section 1981.

**COUNT VI**
**Age Discrimination**
**Age Discrimination in Employment Act - 29 U.S.C. §§ 621,** *et seq.*

115. Marino incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

116. The Age Discrimination in Employment Act makes it unlawful for an employer to discharge or alter the terms, conditions, or privileges of one's employment because of the employee's age. 29 U.S.C. § 623(a)(1).

117. Employees over the age of 40 fall within the class of persons protected by the ADEA.

118. Marino is 52 years old.

119. Marino is an "employee" as defined by 29 U.S.C. § 630(f).

120. NMAA is an "employer" as defined by 29 U.S.C. § 630(b).

121. NMAA took an adverse action against Marino when it removed her from her position, demoted her, and significantly reduced her salary.

122. NMAA's action raises an inference of unlawful discrimination based upon age because NMAA showed preferential to employees who are substantially younger than Marino.

123. As a result of NMAA's unlawful discrimination against Marino because of her age, Marino has suffered economic and emotional distress damages.

124. Marino filed a Charge of Discrimination with the Equal Employment Opportunity Commission on March 30, 2020.

125. The Equal Employment Opportunity Commission issued Marino a Dismissal of her Charge and Notice of Right to Sue on September 8, 2020.

**PRAYER FOR RELIEF**

Based on the foregoing, Marino respectfully requests that this Court award her the following relief against Navy Mutual Aid Association:

A. Back pay;

B. Reinstatement to her former position, or in the alternative, front pay;

C. Compensatory, non-economic damages;

D. Equitable relief;

E. Punitive damages under all counts where punitive damages are available;

F. Liquidated damages under all counts where liquidated damages are available;

G. Pre-judgment interest;

H. Reasonable attorneys' fees and litigation costs;

I. Court costs; and

J. Any other such relief that the Court may deem just and equitable.

**JURY DEMAND**

Plaintiff Christina Marino demands a trial by jury for all issues proper to be so tried.

Respectfully submitted,

    /s/ Andrew Dylan Howell
Andrew D. Howell, VSB #90799
R. Scott Oswald, VSB #41770
The Employment Law Group, PC
888 17th Street NW
9th Floor
Washington, DC 20006
202-261-2829
dhowell@employmentlawgroup.com
soswald@employmentlawgroup.com
*Counsel for Plaintiff Christina Marino*